

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AMERICAN CASUALTY COMPANY OF )
READING, PENNSYLVANIA, as )
subrogee of SOUTHTRUST )
CORPORATION, )
)
    Plaintiff )
)
v. )         CV 03-AR-0138-S
)
)
BILL HARBERT CONSTRUCTION CO. )
d/b/a BILL HARBERT )
INTERNATIONAL CONSTRUCTION, )
INC., a/k/a B.L. HARBERT )
CONSTRUCTION, a/k/a B.L. )
HARBERT INTERNATIONAL GROUP, )
)
    Defendant. )
)



**ENTERED**

JUN 0 6 2003

## MEMORANDUM OPINION

Before the court is a motion for summary judgment filed by

defendant, Bill Harbert Construction Co. ("Harbert"). Plaintiff,

American Casualty Company of Reading, Pennsylvania ("American

Casualty"), as subrogee of SouthTrust Corporation ("SouthTrust"),

brings this action seeking damages for negligence, gross

negligence, and willful and wanton conduct in regards to the

Harbert's performance under a construction contract.

### Facts

SouthTrust, as owner, contracted with Harbert to be the

general contractor on a construction project to build the



SouthTrust Building Phase II, at the Wildwood II Complex ("the
Wildwood complex") in Homewood, Alabama.  American Casualty
insured the property for "builder's risk."  Part of the structure
at the Wildwood complex was a metal plate wall connected to the
building at the main entrance of the SouthTrust office building
(the "wall").  On February 16, 2001, due to high winds, a crucial
horizontal beam ("the support beam") supporting the wall at the
Wildwood complex failed, causing the wall, which was several
stories high, to bow out away from the attached building.  As a
result of this bow the wall became detached from the building,
causing metal panels to fall and water to leak in from the
outside ultimately causing damage to the main building and to
other contiguous property.  American Casualty, as the insurer,
paid SouthTrust $393,897.17 to repair the wall and the other
damaged property.  American Casualty, as SouthTrust's subrogee,
seeks to recover from Harbert what American Causualty claims was
its loss caused by the negligence, or gross negligence, or
willful and wanton conduct of Harbert when it disregarded the
design plans by failing to install restraining plates on both
sides of the support beam.

The original design plans called for restraining plates,
which are steel plates welded to other steel plates embedded in a
concrete column, on both sides of the support beam.  Restraining
plates were only installed on one side of the support beam.  On

the other side of the support beam, instead of using restraining

plates, Harbert used an inferior angle expansion connection that

was anchored to the concrete column with bolts instead of in

accordance with the original design.  As a result of the

unauthorized change in the beam's construction, the support

structure had only 25% of the design strength.

The contract dated January 24, 1996, between SouthTrust and

Harbert consisted of four parts: 1) the "Standard Form of

Agreement between Owner and Contractor," with attachments, 2) the

"General Conditions of the Contract for Construction," (the

"general conditions") 3) the "Amendments and Modifications to

A201 General Conditions," and 4) plans and specifications.  The

general conditions consist of the American Institute of

Architects ("AIA") document 201, which contains a "waiver of

subrogation" clause under paragraph 11.3.17.  The "waiver of

subrogation" clause is as follows:

> 11.3.7 Waivers of Subrogation.  The Owner and
> Contractor waive all rights against (1) each other and
> any of their subcontractors, sub-subcontractors,
> agents, and employees, each of the other . . . for
> damages caused by fire or other perils to the extent
> covered by property insurance obtained pursuant to this
> Paragraph 11.3 or other property insurance applicable
> to this Work, except such rights as they have to
> proceeds of such insurance held by the Owner as
> fiduciary . . .  . A waiver of subrogation shall be
> effective as to a person or entity even though that
> person or entity would otherwise have a duty of
> indemnification, contractual or otherwise, did not pay
> the insurance premium directly or indirectly, and
> whether or not the person or entity had an insurable
> interest in the property damaged.

* * *

> The term "Work" means the construction and services
> required by the Contract Documents, *whether completed
> or partially completed*, and includes all other labor,
> materials, equipment and services provided by the
> Contractor to fulfill the Contractor's obligations.
> The Work may constitute the whole or part of the
> Project.

## Analysis

Harbert argues that it is entitled to summary judgment on

American Casualty's claim because the contract between Harbert

and SouthTrust contained a waiver-of-subrogation clause, and the

Alabama Supreme Court has upheld and enforced such a clause in a

construction contract very similar to the one in question in the

instant action. *See Industrial Risk Insurers v. Garlock*

*Equipment Co.*, 576 So. 2d 652 (Ala. 1991).  In *Garlock Equipment,*

the insurer on a "builder's risk" policy sued the owner's general

contractor after a fire started on the tower roof of one the

buildings due to a sub-subcontractor's negligence.  *Id*.  The sub-

subcontractor's contract contained a waiver-of-subrogation clause

in addition to the "General Conditions of the Contract for

Construction" between the owner and the general contractor.  The

insurer sued as the owner's subrogee claiming that the waiver-of-

subrogation clause was unenforceable.  The Alabama Supreme Court,

relying on *U.S. Fid. & Guar. Co. v. Escambia Elec. & Appliance*

*Co.*, 384 So. 2d 1073(Ala. 1980), disagreed.  The court found that

the general rule was that an owner does not retain subrogation

rights against a negligent contractor or subcontractor, if the

4

owner's builder's risk insurance policy contains a "waiver of
subrogation" clause.  The court, citing a New York case, held
that the purpose of the waiver-of-subrogation clause was to
require one party to the contract to provide property insurance
for **all** of the parties.  *See Bd. of Educ. v. Valden Assocs.,
Inc.*, 389 N.E.2d 798 (N.Y. 1979).  After surveying several
jurisdictions, the court found that waiver-of-subrogation clauses
protect all the parties to a construction project and eliminate
unnecessary disruptions and disputes by allowing one party, the
insurer, to bargain for all the risk.  *Garlock Equipment*, 576 So.
2d at 657.

American Casualty makes three counter-arguments in defense
of Harbert's motion.  First, American Casualty argues that the
waiver does not operate to relieve Harbert of liability in
perpetuity and that Harbert did not have an insurable interest in
the property at the time the damage occurred several years after
the project was completed.  Second, American Casualty argues that
the clause cannot relieve a party from liability as a matter of
public policy when the conduct complained of rises to the level
of gross negligence or willful and wanton conduct.  Finally, it
argues that Harbert cannot seek to enforce the waiver-of-
subrogation clause contained in the contract because there is a
genuine issue of triable fact as to whether Harbert breached that
very contract by not following the design plan, thereby

5

nullifying the waiver.

American Casualty's first argument, really two arguments, is that even if the waiver-of-subrogation can shield the parties from liability it can only do so *during* the construction phase because after completion of the project the contractor has no insurable interest in the property.  *See Intergovernmental Risk Management v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 692 N.E.2d 739, 743 (1998)(". . . general rule in construction cases is that both the owner and the contractor have insurable interest in the property *until* the construction is complete").  American Casualty argues that even though the waiver at issue in the present case specifically directs that it is valid in the absence of an insurable interest in the property, this cannot mean that the waiver is valid in perpetuity because such a rule would violate the Alabama public policy in Ala. Code 1975 §27-14-4, which requires that a party have an insurable interest in insured property.  American Casualty argues that Harbert's insurable interest ended when construction was complete.  *See Fairchild v. W.O. Taylor Commercial Refrigeration and Electric Co., Inc.*, 403 So.2d 1119 (Fla. App. 5th Dist. 1981)(court held parties intended for insurance coverage to protect contractor only during construction).

This court finds an authority from Georgia cited by American Casualty for its second argument very persuasive on this issue.

In *Colonial Properties Realty Ltd. Partnership v. Lowder Const.
Co., Inc.*, Colonial, the insurer, in opposition to Lowder's
motion, argued that the waiver-of-subrogation provision could not
invalidate a party's right to seek damages after the construction
project was completed as a matter of public policy, and that the
construction company could not enforce a waiver provision in the
owner's construction contract without having an insurable
interest in the property.  567 S.E.2d 389, 393 (Ga 2002).

   The Georgia Court of Appeals, relying on opinions from other
jurisdictions, found that the parties intended the waiver-of-
subrogation to extend to "the work," which was defined according
to the contract as "the construction and services required by the
Contract Documents, *whether completed or partially completed."*
This is the exact language used in the waiver in the present
action.  *Colonial Properties* is squarely on point, and this court
finds its reasoning persuasive.  The Georgia court, quoting a
Colorado decision, reasoned as follows:

> Because property insurance applicable to the work,
> other than that obtained pursuant to paragraph 11.3.1,
> may remain in effect after the final completion date,
> so too may a waiver of subrogation rights under
> paragraph 11.3.7 remain in effect.  Thus, . . . the
> waiver of subrogation clause barred subrogation for
> insured losses to the work occurring after the final
> completion date and the date final payment was made.

*Id*. at 392 (*quoting Town of Silverton v. Phoenix Heat Source
System*, 984 P.2d 9 (Colo. App. 1997)).

Relying on the reasoning in *Colonial Properties*, this court finds

7

that the waiver-of-subrogation remained in effect even after the
final completion of the Wildwood complex.

American Casualty appears to concede that waiver-of-
subrogation clauses are generally valid as shields against
negligent acts.  Nevertheless, American Casualty argues that even
if the waiver remained in effect and was valid as to negligent
conduct, it cannot protect Harbert from liability when it either
committed gross negligence or was willful and wanton in failing
to follow the design plans.  American Casualty has presented
evidence that when viewed in the light most favorable to it
suggests that Harbert deliberately disregarded the design plans
and installed an inferior structural system which caused the wall
to collapse.  American Casualty cites several Alabama cases for
the proposition that a party may not contractually absolve itself
of liability resulting from gross negligence or willful and
wanton conduct.  *See Barnes v. Birmingham International Raceway,
Inc.*, 551 So.2d 929 (Ala. 1989)(holding that a general and
unlimited release, although valid and consistent with public
policy as to negligent conduct, would not insulate the operator
of a racetrack from liability for wanton and willful conduct);
*Reece v. Finch*, 562 So.2d 195 (Ala. 1990)(court citing Barnes
held that it was against public policy to contractual release a
party from liability from future wanton or intentional conduct).

Harbert argues that these cases are not on point because

8

they did not involve waiver-of-subrogation clauses, but rather
purely exculpatory clauses.  Harbert insist that a waiver-of-
subrogation clause is an exception to the general rule that
public policy does not favor exculpatory releases from wanton,
willful or intentional acts.  According to Harbert, a waiver-of-
subrogation clause is not a pure waiver of liability, but rather
the clause merely shifts the risk of loss to a third party, the
insurer, who voluntarily contracted for that risk.  *See Indus.
Risk Insurers v. Garlock Equip. Co.*, 576 So.2d 652, 657 (Ala.
1991).  Harbert, citing cases from a survey of other
jurisdictions, argues that waiver-of-subrogation clauses are
generally favored as a matter of public policy because they allow
for the parties to a construction contract to allocate the risk
of loss to a single entity, the insurer.  *See Behr v. Hook*, 787
A.2d 499 (Vt. 2001)(court held subrogation clause enforceable
despite plaintiff's allegation of gross negligence because to do
otherwise would undermined their efficacy); *see also Agra-By-
Products, Inc. v. Agway, Inc.*, 347 N.W.2d 142, 151 (N.D.
1984)(enforcing clause and refusing to allow plaintiff to amend
to allege gross negligence in a lease contract containing a
waiver-of-subrogation clause); *Cf. Town of Silverton v. The
Phoenix Heat Source Sys., Inc.*, 948 P.2d 9, 14 (Colo. Ct. App.
1997)(waiver of subrogation provision in AIA contract barred,
*inter alia*, product liability and breach of warranty claims).

In response American Casualty directs the court to *Colonial Properties,* discussed *supra.*   In *Colonial Properties*, the Georgia Court of Appeals reversed the lower court's grant of summary judgment for the construction company based on a waiver-of-subrogation clause when the damage was caused by the contractor's failure to follow design plans.

The waiver-of-subrogation clause at issue in *Colonial Properties* was written on a standard form provided by the AIA like the one at issue here.   Subparagraph 11.3.7, which is essentially worded the same as the waiver in the present action provided:

> The Owner and Contractor waive all rights against each other and against the Construction Manager . . . for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work . . . . A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

The Georgia appellate court reversed the lower court's holding finding that summary judgment was inappropriate because there existed a genuine issue of material fact in regards to whether Lowder, the contractor, either with gross negligence or willfully and wantonly failed to follow the design plans.   This court finds the court's reasoning in *Colonial Properties*

10

persuasive. The public's interest is best served if, as a matter of policy, parties to a construction contract are precluded from protecting themselves against liability resulting from their failure to perform work according to express directions, whether that failure resulted from gross negligence or for willful and wanton failure to follow the design plans. Incentives matter; if parties to a construction contract have no incentive to complete the work as designed then as a matter of human nature, this court has observed, they often will not. The court finds that the public's interest is best served if the parties have an incentive to complete work competently and according to design. The court, finding merit in American Casualty's second argument, will not address American Casualty's remaining argument.

## Conclusion

For the foregoing reasons summary judgment for Bill Harbert Construction Company will be denied in part and granted in part. A separate and appropriate order will be entered.

DONE this 6 day of June 2003.

WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE

11