UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



| | |
|---|---|
| AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, as subrogee of SOUTHTRUST CORPORATION,<br><br>    Plaintiff<br><br>v.<br><br>BILL HARBERT CONSTRUCTION COMPANY, etc.<br><br>    Defendant. | CV 03-AR-0138-S |

**MEMORANDUM OPINION**

Before the court is a motion for summary judgment filed by defendant, Bill Harbert Construction Company ("Harbert"). Plaintiff, American Casualty Company of Reading, Pennsylvania ("American Casualty"), as subrogee of SouthTrust Corporation ("SouthTrust"), brings this action seeking damages for gross negligence and willful and wanton conduct regarding Harbert's performance under a construction contract.[1] The court's jurisdiction is based on 28 U.S.C. § 1332.  Alabama tort law governs both the claims and the defenses.

---

[1] Initially, American's complaint also alleged negligence. By order and opinion entered June 6, 2003, this court dismissed the action insofar as it stated a negligence claim, holding that the waiver-of-subrogation clause in the master construction contract between Harbert and SouthTrust waived plaintiff's subrogation rights to any ordinary negligence claim that might have existed in favor of SouthTrust.

1



**Pertinent Facts**

SouthTrust contracted with Harbert to be the general contractor on a construction project to build SouthTrust's Wildwood II Building ("building") in Homewood, Alabama. Construction began in 1996 and was completed in 1997. American Casualty insured the property for "builder's risk." The building's design included a five-story decorative or "feature" wall (the "wall"). According to the original plans, the wall was to be connected to the building structure by eight connection points. Each connection point consisted of steel plates that were placed on either side of a concrete column and anchored together and to the column by steel embed plates placed inside the column.

On February 16, 2001, due to high winds, at least one of these connections failed, causing the wall to bow out away from the attached building. As a result, the wall became detached from the building, causing metal panels to fall and water to leak in from the outside. American Casualty, as insurer, paid SouthTrust $393,897.17 to repair the wall and other damaged property. American Casualty, as SouthTrust's subrogee, seeks to recover for the loss it claims was caused by Harbert's gross negligence or willful and wanton conduct in constructing the wall.

Harbert subcontracted the structural steel work for the wall

2

to M&J Materials ("Materials"), which in turn subcontracted the steel erection to another company called C&C Riggers ("Riggers"). The master construction contract anticipated the involvement of subcontractors and clearly provided that Harbert, as the general contractor, was ultimately responsible to see that the building was constructed properly and according to plans.

It is undisputed that the construction of the wall and its connection points departed from the original plans. Some of the steel embed plates were misplaced inside the concrete columns, making it impossible to directly connect the external steel plates to the embed plates. To compensate for the misplaced embeds, Riggers implemented a "fix" that was allegedly provided it by Harbert's project superintendent, Mike Sullivan. This fix involved the use of steel angle plates, bolts and epoxy to serve as connection points between the design wall and support columns. The connection point(s) that ultimately failed were constructed using this fix.

Harbert has a specific process for coordinating deviations from building plans that are determined to be necessary. This process includes filing a Request for Information ("RFI") so that engineers and/or architects are able to verify the structural integrity of proposed design changes. It is undisputed that the design change at issue should have been submitted to engineers for review. There is no record that Harbert or its

3

subcontractors involved any engineers in the design change, or expressly determined that the design change would not negatively affect the structural integrity of the wall. As constructed, the wall's wind load capacity was, in fact, significantly reduced.

## Analysis

Harbert bases its motion for summary judgment on what it characterizes as an utter lack of evidence that any Harbert employee, or any other person involved in the wall construction at issue, knew that the altered connections were likely to lead to property damage in the event of high winds. First, Harbert argues that American Casualty's ostensibly separate claims for gross negligence and wanton/willful conduct are but one claim, and that for wantonness. According to Harbert, under Alabama law gross negligence has no legal significance apart from simple negligence, on the one hand, or wantonness, on the other. And, because this court has already held that American Casualty, as subrogee, has no right to pursue negligence claims against Harbert, to the extent American Casualty's gross negligence claim alleges something short of wantonness, this court's prior holding dictates that such claim be dismissed.

The court agrees with Harbert's argument. Gross negligence and ordinary negligence are not qualitatively different, i.e., *gross* negligence is not wantonness. See *Stringer v. Ala. Midland*

R. Co., 13 So. 75, 80 (Ala. 1893); *Town of Loxley v. Coleman*, 720 So.2d 907, 909 (Ala. 1998)("the word 'gross,' when used in connection with the word 'negligence,' implies nothing more than simple negligence"). This is not to say that gross negligence is a concept entirely foreign to Alabama law, but only to say that there is no legal distinction between gross and ordinary negligence on which the court can distinguish between the ordinary negligence claim, which it previously dismissed due to the waiver of subrogation that SouthTrust executed in favor of Harbert, and the gross negligence claim that American Casualty asserts. *See id.* Under Alabama law, then, the action is due to be dismissed insofar as it states a claim for gross negligence.

Harbert also asserts that summary judgment is appropriate as to American Casualty's wantonness claims. To survive summary judgment on its claim that Harbert acted wantonly, American Casualty must present "substantial evidence" that Harbert – or some actor whose knowledge and conduct may fairly be attributed to Harbert – consciously deviated from the building plans "while knowing of the existing conditions and being conscious that...injury will likely or probably result." *See Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala. 1998); *Hobart Corp. v. Scoggins*, 776 So.2d 56, 58 (Ala. 2000); *Hicks v. Dunn*, 819 So.2d 22, 24 (Ala. 2001). While knowledge, both of the conditions and of the likelihood of injury, is the *sine qua non*

of liability for wantonness, a plaintiff need not prove knowledge directly; it may be proved "by showing circumstances...from which the fact of knowledge is a legitimate inference." *Hobart*, 776 So.2d at 60.

The burden on American Casualty is simply to produce evidence that is sufficient to support the inference that Harbert knowingly deviated from the plans and that, based on the conditions known to Harbert at the time, it was conscious of the likelihood that the wall would not withstand the natural forces it was designed to withstand. Harbert argues that there is no evidence that any Harbert employee knew about the fact that embed plates were misplaced or about the departure from the building plans that was not subjected the usual procedure. The court rejects this argument, noting that American Casualty points to testimony that creates a fact issue as to whether the need for a deviation from plans concerning the wall connections was brought to the attention of Harbert's superintendent, Mike Sullivan. Cross Dep. p. 34-35. Further, it is undisputed that the departure from plan designs did not happen by accident and that, at the very least, employees of Harbert's subcontractors knew about the problem with the embed plates and the intentional decision to use an adapted mechanism to attach the display wall.

Harbert argues that the knowledge of its subcontractors is not attributable to it and is not sufficient to support a finding

6

of wantonness. The general rule is that a prime contractor is not liable for the tortious performance of an independent subcontractor. An important exception to the general rule, however, is that:

> [a]n employer who **by contract** or law owes a specific duty to another cannot escape liability for a tortious performance by reason of the employment of an independent contractor.

*General Finance Corp. v. Smith*, 505 So.2d 1045, 1047 (1987). Harbert admits that it contractually assumed responsibility for the acts or omissions of its subcontractors on the project. Its argument is that this nondelegable contractual duty somehow does not encompass the alleged wantonness of its subcontractors in adapting and installing connections in the feature wall. Harbert's position is out of step with the Alabama case law, and the court holds that, to the extent American Casualty presents substantial evidence that a subcontractor acted with the requisite knowledge to support a jury finding of wantonness, Harbert cannot escape responsibility for that tortious performance on summary judgment.

  Ultimately, resolution of Harbert's summary judgment motion turns on whether Harbert's assertion that "[t]here is no evidence that Harbert's employees or subcontractors knew that the manner in which the relevant connections were built was likely to cause their eventual failure," is a correct statement. Def. Reply

7

Brief p. 2. Viewing the evidence in the light most favorable to American Casualty, several individuals involved in the feature wall construction were aware that the steelwork did not conform to building design. The simple fact of deviation from the design is not remarkable in itself - Harbert points out that on this very project it went through a design variance process for at least two hundred different issues. In light of the procedures Harbert had in place for dealing with deviations from plan design, however, and the apparent fact that no calculations were performed to assess the extent to which the altered steel connections would weaken the structural integrity of the feature wall, a reasonable jury might infer that Harbert or one of its subcontractors consciously disregarded a likelihood that injury to SouthTrust's building would occur in the event of subsequent high winds.

Moreover, American Casualty has presented evidence that Harbert was responsible for scheduling inspections of the steelwork and that, particularly in light of this intentional deviation from plans, an inspection should have been scheduled. Viewing that evidence in the light most favorable to American Casualty, a reasonable jury could infer that Harbert omitted to perform its duty to arrange inspection in conscious disregard of a known risk of structural failure. Thus, the court holds that genuine issues of material fact exist with regard to American

8

Casualty's wantonness claim, making summary judgment on this issue inappropriate.

American Casualty's complaint contains a fourth count requesting costs and attorney's fees. In its brief, Harbert points out that no such claim is available under Alabama law. In response, American Casualty states that its fourth count is not specifically a claim for attorney's fees, but is instead a claim for punitive damages, which might include fees and costs American Casualty incurred in prosecuting this action. Because Harbert did not respond to this characterization of plaintiff's fourth count, the court will assume without deciding at this stage that a punitive damages claim may be presented to the jury, subject of course to later scrutiny if the evidence plaintiff presents at trial is insufficient to allow the jury to consider a punitive damages award. Whether attorneys fees can be a part of punitive damages is an issue that Harbert has not addressed and that the court will not address now.

Finally, American Casualty argues that its evidence establishes a triable issue as to whether Harbert is liable for willful misconduct due to its intentional substitution of an inferior connection. The court agrees with Harbert, however, that there is no evidence in this case that Harbert acted with a design or purpose to inflict injury. Accordingly, the court holds that there is no genuine issue of material fact and that

Harbert is entitled to summary judgment insofar as the action alleges willful misconduct.

### Conclusion

For the foregoing reasons summary judgment for Bill Harbert Construction Company will be granted in part and denied in part. A separate and appropriate order will be entered.

DONE this 10th day of November 2004.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE